Good morning, everyone. First matter is Alburg and Edwards vs. Jones and Mr. Solvin is with us remotely, I believe. Yes, Your Honor. You may proceed. How are you feeling? I know you tested positive. How are you feeling? I feel like I have a cold. Okay. All right. Okay, you can go ahead. I do want to reserve a minute and a half for rebuttal. Okay. May it please the Court, my name is Robert Solvin and I represent the appellants Iana Alburg and Timothy Edwards. In this case, Ms. Edwards and Mr. Alburg contend that their constitutional rights under the Fourth and Fourteenth Amendments were violated in three ways. First, Ms. Alburg's rights were violated when the police impounded her car and gave it to a company that claimed to be her creditor. Second, Ms. Alburg's rights were violated when she was falsely arrested for stealing her car. And third, Mr. Edwards' rights were violated when he was falsely arrested for operating Ms. Alburg's vehicle, which he was actually doing with Ms. Alburg's consent. Well, let me stop you there. Was there probable cause to justify that particular arrest? No. There was not probable cause because – Are you talking about Edwards or Alburg? Who's arrested? Edwards. Edwards. And why wasn't there probable cause vis-a-vis Edwards? He's pulled over on a legitimate traffic stop because of the blockage of the rear window, so traffic violation, so the stop is legitimate. The tags are run on NCIC. It comes up as stolen. So why isn't that enough to justify the officer for arresting him for driving a stolen car? It's not enough because – well, the claim is against Trooper Jones for the false arrest. Mr. Edwards' claim is against Trooper Jones for the false arrest. Trooper Jones had – But we didn't hear any arrest Edwards. Yes, but he did it because of Trooper Jones' false arrest report. And that arrest, after Trooper Jones makes a false arrest report, after any police officer – We'll break that down because Falberg, I guess it was, or Falco, had information which Jones relied upon. Who prepared the affidavit? Was that – that was Jones based upon information from Falco. Is that correct? That's for when charges were pressed against Edwards later, after his arrest. So the arrest, while we're not charging or we're not claiming that Officer Kearney was liable for the false arrest, we are claiming that Trooper Jones was liable for the false arrest because he shouldn't have issued a false arrest report for a vehicle, for Ms. Alberg's vehicle. Because of the omissions. I get that. But you've got to break it down because information was made available to Falco – to Falcone, I'm sorry. Falcone was told who the true owner of the car was. And somehow – I don't understand what happened in the interim – but somehow, after the information was given by the Assistant ADA that in Pennsylvania, ownership is governed by title and not lien, somehow the determination was made that irrespective of that, there's a stolen car because AEL was the owner of the car. Now, help me there. Who made that determination? That was Falcone. Is that right? Falcone made that determination when he did his investigation after receiving my letter in the beginning of September. So initially, it was Officer Jones who made that – or Elijah Jones who made that determination on the spot at the repossession lot where he issues the stolen vehicle report. Okay, well, that's a different issue. In terms of Jones, all he knows is that a car has been driven off the lot without permission of the person who had repossessed it. He does check with the – with AEL. And he's shown, I guess, by the guy at the lot, he's shown a piece of paper which says that AEL has the right to repossess. And then he's told that irrespective of that, the, quote, owner of the car comes and drives the car away after it had been legally impounded. And you would agree that it had been legally impounded. There was nothing illegal – well, it wasn't impounded. It was repossessed. Okay, repossessed. There was nothing illegal about the repossession, but it was done without deprocess. Therefore, the police cannot get involved. The police can't take the side of the creditor and say that the vehicle is stolen when there's no deprocess because – Well, you know, we've got to be careful because there's so many things here that can arise from this. Let's keep it narrow because now you're adding in deprocess and state and that – And I want you to separate out your 1983 federal claims from your state claims. Yes. This is getting very messy. Well, I'm going to concentrate on the 1983 claim. Okay. And that's the Thrustgate case. The – Elijah Jones goes to – issues the stolen vehicle report. And it's impossible for the vehicle to be stolen under Pennsylvania law because a creditor, a lien holder, is not considered a victim of a theft crime. Okay, but if you focus in on what Jones did and then look at the test of the qualified immunity, all he knows is that the car was properly repossessed. Someone then came, the owner of the car, the owner in quotation marks, came and without permission of AEL, the lien holder who had the right to possession of the car at that time, not the title holder, she comes and drives the car away. Why wouldn't Jones, in terms of the qualified immunity threshold, why wouldn't that be reasonable, maybe wrong, but nevertheless reasonable for purposes of qualified immunity? A reasonable police officer in Trooper Jones' position should know, based on this, for instance, this court's decision in Abbott v. Leachaw, that the police are not supposed to get involved and take sides in a self-help repossession. In Abbott v. Leachaw, this court imposed liability on that constable Deal when he told Mr. Abbott that he would arrest him if he drove away with the van that Ms. Leachaw was trying to repossess from him. But don't those cases speak to police officers' involvement in the actual repossession and not what happens weeks later? Until there is due process, it's the same. I mean, all it is is a creditor saying, you can't take the car because you owe us money. The creditor could not call up the police in the first instance and say, there's a guy riding around in a car who owes us money and ask the police to arrest him. Trooper Jones and all the police should understand that when a creditor asks them to repossess a car and says that someone's not driving a car with their permission because they owe money on it, that they can't get involved with that unless, you know, as in a court order, you know, in the case. Well, but, yeah, as David said, this is getting really messy. Say involved. Are you saying that Jones should have just walked away and not done anything once he knew that the car was taken off the lot improperly? It wasn't taken off the lot improperly. She drove it through an open gate that violated no law. What the established law is, for instance, in Hensley v. Gasson by the Sixth Circuit, that people have a right to resist a repossession. They don't have to acquiesce to it. It had only been repossessed, though. The car was repossessed. The possession of the car was in. AEL possessed the car at that time. So she interfered with the AEL's possessive interest in the car and drove it away. And we get into all kinds of arguments about ownership and title. And as my property professor used to say, ownership doesn't mean a great deal. You've got to look at the relationship between the person who says they own it and what they say they own. And focus in on the relationship. Here she may have, quote, owned the car, but her relationship with the car was that she was in default on the loan and had lost her possessive interest in the car. No, that's not true at all. She didn't possess the car, did she? She didn't possess it. It's an error to say that she was in default of the loan without due process. That doesn't mean anything to me. What do you mean by due process? Notice an opportunity to be heard, a court hearing determining that she's in default of the loan. Okay, but under Goldstein, they had a right to repossess the car. You're talking about a pre-deprivation hearing. Well, we don't know whether they had a right to repossess the car. The law allows them to do a self-help repossession, even if it's completely, even if they have no right to repossess the car, because it's by self-help. They can just unilaterally declare a default. They could do it purposely. They could do it by mistake. They can take a car and they've repossessed it, but that doesn't mean that there's a default. There's not a default that the police can act on until there's some due process. Again, there's some due process. Is that really helpful? Until there's notice and opportunity to be heard. Okay, all right. This court said that the police cannot hold a curbside courtroom to determine who has a superior possessory interest in a car. A court has to determine that. So when she drives off with the car without any breach of the peace, then she's in possession of the car, and she's only in possession of the car because the repo lot should never have had the gate open. If they repossess a car, they're supposed to protect the collateral. And really, a reasonable police officer in Mr. Jones' position, when he hears that Ms. Allberg drove the car through an open gate, should have asked, why was the gate open? So you're saying, what if the violation, the 1983 violation, then occurred when he entered the information into NCIC? Is that the point? That triggers liability under 1983? That's the first thing. It certainly does, because that leads to, that entry of the false arrest, entry of the theft report, which was a false theft report, and a theft report he should have known was false. Okay, but what is the tag on that deprivation of liability? When he enters it into NCIC, that's not a false arrest, right? He hasn't interfered with her coming and going, so she's not arrested there. So what is that? What is the nature of that animal? Well, that is the violation, but it's letting course for that foreseeable result. There are foreseeable results from entering in a false arrest. Okay, but what do you call it? It's not false arrest. What is it? Well, it is false arrest. She's not arrested. She's driving down, she's not arrested when the information goes into NCIC. She's not in custody. As a foreseeable result of entering into the false arrest report into the NCIC, then Mr. Edward gets arrested. Let me stop you there on Edwards again. Edwards ultimately pled guilty to a summary offense, right? Yes. So how does that impact your claim with respect to Edwards? He would never have been arrested if it wasn't for the false arrest report. He stopped the car because he read that it was stolen. But it was not a favorable case. Go ahead. I'm sorry. For malicious prosecution, you have to show it ended without a conviction. He was convicted. End of story. Well, what I read and cited in my brief was that there is a rebuttable presumption that a conviction, in this case the pleading guilty to driving without a license, indicates probable cause. But the probable cause was the false report that the car was stolen, which should never have been entered into. Based on the facts, Officer Kearney knew he had probable cause. But we're not bringing the false arrest claim. Mr. Edwards' false arrest claim for the actual initial arrest is not against Officer Kearney. It's against Trooper Jones. Except Kearney is the one who made the arrest. Judge McKee and I are having the same problem. Like, false arrest is against the person who arrests you. This is something different then. The person who caused the arrest was Trooper Jones by making the false arrest report. That has a foreseeable result, approximate cause. Do you have any precedent in which person A, scheming back at police headquarters, cackles and causes person B to make an arrest, and person A gets hit with false arrest liability? Person A, yes, because there are cases. Do you have precedent cited? I believe it's cited in my brief. I might be in a footnote. It comes up under approximate cause, that it's a proximate cause issue, that a police officer would do something like enter a false arrest claim and then sell the line. You're not suggesting there was a conspiracy between the officers, are you? No. You didn't plead it, right? No. But there's a foreseeable result from entering a stolen vehicle report, that someone down the line will be stopped and arrested for driving that stolen vehicle. Now, though, after Mr. Edwards' arrest, they, you know, then they write a affidavit of probable cause that misrepresents the ownership of the vehicle. And, you know, with Ms. Auberg, she's not arrested. See, that troubles me, but I don't know what to do with it. I just don't know what to do with that. And I'm not getting a great deal of assistance in our discussion here, because clearly information was relayed, I think September 6th, from the assistant DA to, I think it was Falcone, under Pennsylvania law, ownership of a vehicle is governed by title and not lien. Nevertheless, based upon the lien holder, AEL being the lien, someone else, and the names, I'm getting confused here, takes out an affidavit of probable cause saying that AEL is the owner. But I don't know what to do with it. It's clearly wrong. I have no idea what to do with it. That's a violation. It's a violation. That caused, well, for Ms. Auberg, that was what led to her arrest. Ms. Cooper-Jones, false representation. But again, it's just being said Jones didn't arrest her. Well, now I'm talking about Auberg. And Ms. Auberg's arrest was due to the arrest warrant issued by. It's due to negligence. At the very least, there's a lot of negligence going on here. Well, it's not negligence. When he writes a report, when Cooper-Jones writes an affidavit of probable cause and criminal complaint that misrepresents the ownership, and he knows that he's misrepresenting the ownership, he knows at that point that the vehicle's titled Auberg, but then he knowingly disregards that and says that it's owned by. I totally agree with you. I totally agree with you. I just don't know what to do with it. It was in the confines of 1983. I don't know because someone else made the arrest, and it would make a great law school question. I don't know what to do with it. Isn't there an underlying qualified immunity issue running throughout this, in that as I read these cases, the law's pretty clear in the circuit with respect to self-help, I mean police assisting a repossession during the actual investigation, during the repossession, but not necessarily following the repossession? It's the same at all the times. So the same standard applies? Well, there's been no notice and opportunity to be heard for the vehicle owner, for any collateral owner, and at that point when Ms. Auberg resists the repossession and takes her car away without a breach of the peace, it's then back in her possession, and in this instance the police take the car away from her and give it to the creditor and arrest her. Well, you know, and I guess Goldstein is the case. We have said that when a creditor repossesses and doesn't involve a breach of the peace, that's perfectly appropriate if the car is collateral for the loan that they gave Rice to Lane. So that's what AEL did here. And so when you talk about due process in the context of the repossession, that's what gives me pause because you're arguing for a pre-deprivation hearing of some sort, but it's clear that we have a creditor exercising some right to repossess collateral of a loan. That pre-deprivation hearing is not part of what you're calling due process. It's something else. Your time is up. Before we hear from your opponents, let me just ask you this because we have counsel here for the township appellants. I don't see anything here that gives rise to any kind of Monell liability against the township. I'm not even sure that you're really pressing the point in your brief. And maybe you can help me. Am I missing something here? The officer. Hold on. I'm sorry. Go ahead. Detective Palo and Trooper Carrick and police officer Kearney were not trained to know that they should not press charges against someone for a self-help repossession. Okay. Okay, thank you. And you do reserve some time. I'm going to mess this up. I apologize. Did you miss this? Did you miss this, your honor? Okay. Very good. Good morning, your honors. Good morning. Good morning, counsel. The probable cause issue from the Ridley Township officer's perspective is a simple one. Officer Kearney, and actually nobody mentions this, but it's in Officer Kearney's report. It's in the affidavit of probable cause. Officer Kearney is driving down McDade Boulevard when he sees this vehicle with a blue tarp. I don't think that's a problem. I just don't see that as being a problem. I'm sure that Mr. Sutton would disagree with me, but he clearly had, and I've mentioned this to him in my questioning, he clearly had probable cause to stop Edwards. Absolutely. And to arrest Edwards based upon the NCIC information. Yes. Okay. I don't see any problem with that. Yeah, and the false imprisonment is treated the same as the false arrest. So the probable cause takes care of that on behalf of Officer Kearney and Palo. Counsel has referenced in his brief that there were inaccuracies in the affidavit of probable cause. What Lieutenant Palo did was take Officer Kearney's report and basically used that for the affidavit of probable cause. At the time Officer Kearney wrote that report, there was nothing inaccurate in there. Isn't there? Because that's what they believed was the truth. There was nothing in terms of ownership of the vehicle or any of that. So there's no material omissions, no misrepresentations. There's nothing certainly that would have been. Well, as to Kearney, there may not be, but clearly we've got a problem here because the officers, and specifically I guess Palo was informed what constitutes ownership of a vehicle in Pennsylvania law. Despite that, he ends up putting information in the affidavit of probable cause that AEL was the owner of the car. Now, that's the problem. I don't know what to make of it, but it's a problem. The probable cause might insulate you from, you know, false arrest or false prosecution, but why is that an insulation against the due process? It seems like what Judge McKee is getting at is there's a federal due process claim here. I don't see how a federal due process claim attaches here to begin with. There was no state action when this vehicle was repossessed. Your client directed that the car be towed with instructions to be delivered to auto equity. Now, if you look at the affidavit of probable cause, they had it towed from the scene by a local tower. Now, the plaintiff wants you to infer that my clients then said to Varone, you can turn this over to the other tower, the repossessor. I don't know how you make that jump. I don't know how that's a reasonable inference because there's nothing here, nothing in the record that would establish that either Officer Kearney or Lieutenant Palo gave instructions to Varone to turn that vehicle over. And the bottom line, I guess, when you look back at the repossession, there was nothing improper about the repossession. They had every right to repossess the vehicle. So when the vehicle was taken from them under circumstances that would be less than, I guess you'd call it maybe subterfuge. I don't know whether she went there with that intention or not, but she took the vehicle under those circumstances. Talk about what's in the record, but this was dismissed, and the complaint specifically alleges that paragraph 64 that Palo directed them to turn the vehicle over with instructions to deliver to auto equity. So we can't say there's nothing in the record in this procedural posture. There's no factual basis for that allegation. It's alleged in the complaint. I understand that, Your Honor. It's alleged in the complaint, and I can tell you that there's no factual basis. But don't we have to accept that it's true at this juncture? It's a dismissal. So let's assume, obviously, the accuracy of that statement, that that's what occurred. He is given information by the skip-back barracks that this is the situation. AEL owns the vehicle. He puts that in his report. He puts that in his affidavit. The plaintiff goes before a judge on an arraignment, and bail is set, et cetera. So where is the inaccuracy from where Lieutenant Palo is looking at this? Because that inaccuracy would have to be, as I understand the law, deliberate inaccuracy, not simply a negligent misrepresentation. Couldn't a fact finder conclude deliberate inaccuracy when the officer is informed how you determine ownership of a vehicle, ignores that, and then puts down the creditor as the owner of the car when making out the affidavit? Why would it not be sufficient to get you an attorney? Because it's already in two law enforcement networks that it's been stolen. He's been given information from a trooper at the barracks as to what happened. But at that point, he knows who the owner is. He may have been getting information that it was stolen. But who is the owner of the vehicle? Once it's repossessed, who has the right to it? It's clear. Does the plaintiff have that right? Does Auburn have that right? Isn't he told by an assistant district attorney as to how to determine ownership at this point? I think that came out later in September. That was a discussion between one of the corporals at the state police barracks and an ADA in Montgomery County. See, this happens all on August 17th. The arrest of Edwards, the criminal complaints filed, he's arraigned. These officers from Ridley Township have no further contact with this matter. Yeah, but Allberg is also arrested, isn't she? Excuse me? Isn't Allberg also arrested based upon a search warrant which is based upon an affidavit that says that the vendor, or the creditor, I'm sorry, is the owner of the vehicle? Are you talking about Allberg? Correct. Now, Ridley Township officers had nothing to do with that arrest. Let me ask you about another claim. There's a conversion claim that got lost in the shuffle. The district court didn't address it. Neither party addressed it. Doesn't that mean we have to send it back down to the district court? Well, I don't know that it's ever been addressed by plaintiff either, and hasn't he waived that issue on appeal if he hasn't addressed it? That's the only thing I can say. I don't see how, once they have probable cause to make the arrest of Edwards in Ridley Township, that car is going to be impounded. It's going to be taken away. But then there's affirmative direction to send it back to the tower rather than to send it where Pennsylvania law says, to the person who has the title or to hold on to it. They're sending it back to the AEI, and that itself could be conversion. Well, again, we come back to who had the right to the vehicle. That, I think, is the issue, not who is the technical owner of the vehicle. So it's bound up with this due process. Like, you've got to go through due process before you figure out who gets it. You don't just turn it over to AEI. But, see, the problem with that is the due process, which really would have had to apply when it was repossessed to begin with. There was no state action there. There's no issue there with due process. That's a contract action. Okay, so once that. Then once they arrest him, they don't send it back to the person who's on the title. They go and send it to AEI. I don't think the title, though, is dispositive, because if a car is legitimately repossessed and my name is still on that title, does that give me the right to repossess it from the repossessor? I don't believe so. I don't know that there's any law been cited that says that's the case. So even if, sorry, Lieutenant Palo said to Verones, give it back to AEL, whoever that repossessor was, I don't think there's any violation there at all. At all. So I'm sorry, I might red light slip, but does the court have any further questions? I don't. No, I don't. No, thank you. Thank you very much. Mr. Sorrell. Two preliminaries. First of all, Trooper Jones. Let her state her name for the record first. Sorry. Just put your name for the record first. My name is Claudia Tesoro, and I represent the State Police Act. You've conceded in a footnote the claims against Trooper Jones need to go back for him to answer, and those just, you know, he moved to dismiss only Allberg and Edwards state law claims, so the 1983 claims should not have been dismissed. Those have to go back. I think that what, yes, basically, I know the footnote you're referring to, and the district court went way too far as far as Jones is concerned, because Jones did not move to dismiss the key claims. And it's to your credit that you've set that aside. That's something the district court ought to deal with. It really is. And the conversion point here, no one really seems to be discussing the conversion claim here. I guess that's not against the state defendants, though, is it? That's against the written defendants. It's kind of hard to tell what's alleged against whom because the complexity of the counts and who's named and which ones, but I do think it's very significant, and this was kind of touched on before. Conversion is a tort. It's a state law matter. There is no discussion one way or another in the appellant's brief about any state law claims and the supposed necessity of keeping them alive. And as far as I'm concerned, the state law claims went by the wayside as a result of that. So there's no real need to probe the non-federal claims against whoever is before the court now. Well, false arrest and imprisonment are... Those are federal claims, potential federal claims. I don't question that those have to be sorted out, although not as to Jones at this point. What do we do about that? It is troubling what happened here, and because of the messiness of it, you, Judge, used this very apt description of this. It's really hard. It's like nailing, as Judge McCarthy used to say, it's like nailing jelly to the wall. It's really hard to get a grasp of this. You and me both, Your Honor. I think the case has been presented in a pretty difficult-to-follow way. My point in being here now is to explain why the claims against the state police at Belize, other than Jones, there's no basis for those. So you admit there is a basis for a claim as to Jones. So maybe you can address whether or not qualified immunity would shield him from that claim. I didn't hear the last part of what you just said. Maybe you can address whether or not qualified immunity would shield him from that claim, because it seems either an intentional act or deliberate indifference, where he has information which he totally ignores, that leads to someone's subsequent arrest in the way the affidavit occurred. Was that Jones? I confused the claims. Jones filed the initial report, and that's the only thing that got this. That's what got this ball rolling, as I understand it. Yeah, you're talking about the report going from the possession yard. The Bayer report that Topdotch said the car was taken. That's August. We're now into September. Didn't there come a point where Allberg, not Edwards, because I don't think there's any problem with Kearney's action vis-à-vis Edwards, but didn't there come a point where an arrest warrant was issued for Allberg? There did come such a point, yes. Okay. And that was based upon information which is dead wrong, and the officer who prepared the affidavit which gave rise to the arrest warrant knew that the information that was going in, that it was dead wrong. I don't know. I mean, when you say dead wrong, I'm not sure I go that far. Didn't the ADA, I think on September 6th, the assistant district attorney told Falcone, I think it was, that ownership is determined based upon the title owner, not the lien holder. There is something in the documents that says that, although I would like to offer a way of making sense of that, which is any one of us in this courtroom may have bought a car and financed it or borrowed money against our car. We still have the title, and there is a lien on the car, which is recorded by PennDOT or whoever, to demonstrate that the ownership of the car is subject to a lien, an interest of another party. And that's what got this entire mess, if you forgive me for using a colloquialism, into the courtroom. But she was arrested for stealing her car. But she did not have an absolute right to have the car once the creditor had exercised its right to repossess due to nonpayment. So the Trooper Jones claims are going to have to be dealt with on remand. But Corporal Falcon, or I don't know if it's Falcon or Falcone, Falcon is the one who consults with the ADA and nevertheless goes ahead. He does the title search, learns Alberger owned the car, but he still recommends charges. So why can't he be liable for false arrest or imprisonment for setting the wheels in motion and submitting this that leads to her being arrested and imprisoned? I don't think Falcon did as much as you suggest. He's the one who spoke to the ADA, I think, on September 6th. He did speak to the ADA, but that kind of goes to my theory about what does or doesn't justify repossession of a car, or retaining it or not retaining it, or allowing it to be held by a repossessor and so on. What do we make of the allegations in the complaint that we have to accept is true that he was given that information by an assistant district attorney? Well, it's a recounting in the documents of what this assistant district attorney said. And I think that what may have been said is probably more complicated than what's written there. Mr. Sorrell, I'm looking at Exhibit B in Appendix A59. It's a report by Corporal Thomas Falcon. Yes. He says, on September 4th, 2018, ADA-Corea related proper ownership to be determined by the title. And then further down on that page, September 6th, Trooper Ristigarpana checked PennDOT. The owner is displayed as Ayanna Albert, but a lien shows auto equity. And then recommendation, based on the guidance provided by the DA's office review of the title history, I recommend proceeding with charges against Albert for theft and unauthorized use. So he's recommending charges in the face of the ADA's advice to the contrary. Why doesn't that open up for liability for false arrest and malicious prosecution? I think that one of the problems is that that page that you're reading from is the only thing we have about Falcon. Why should it survive a motion to dismiss? One page. The jury can do what it wants with that page, but that's enough to get past a motion to dismiss. But we have to read it in context with the rest of the complaint. Read in the light most favorable to the non-moving party. Okay. But the non-moving party does not deny that the car was originally repossessed from her at a point when she apparently, for reasons we don't know, had stopped making her payments. And that brings me full circle to my point about the fact that the repossession occurred because the payments were stopped kicks in the rights of the lien holder. Not to arrest her, though. Not to arrest her, no. And the charger was stealing the car. And that's what happened. The arrestor and charger were stealing the car. But she, I think that we are a bit constrained here because it seems to me that the eventual unwinding of all this would show that she. . . But that's beyond the face of the complaint. I know. But she says, and on the face of the complaint and on the face of the documents, that she went to the lot merely to pick up her possessions. And then she jumped on the idea of, hey, that gate is open, and she drove it away. She did not secure any kind of concession or recognition or anything else. She hadn't. . . The car was in the proper possession of the lien holder when she did that because she had not paid her payments and the repossession had occurred and there was perhaps a conflict of whose interests would trump whose interests that might have eventually resulted in her getting out from under the deal because, as she alleges, it was usurious. But the repossession was proper. There's language, I think maybe one of the court mentioned it earlier. Yes, the fact that the repossession, at least the initial repossession, was proper doesn't get us anywhere. That just explains what the car was doing in the lot. Well, the initial repossession was okay. I don't think we have any dispute about that. And once it was in the possession of the recovery lot, there was nothing inherently wrong with that. Right. What I think is very questionable, although I can't find another case like this where somebody, quote, unquote, is accused of stealing her own car. I don't think it happens much, apparently. I sure hope it doesn't. I sure hope so, too. I think that was a very unwise decision on her part, frankly. And if all she did was go to the lot by her own account to pick up her belongings, it's very questionable whether she had the right to drive it out, even though they gave her that car. Whether she did or not, she ends up getting arrested, as I think the officer admitted, for stealing her own car. Yes, but then she defends herself, or the charges run their course,  Well, you know, the other matter, and I guess it's beyond our inquiry, but it's very, very troubling that if we look at the underlying loan, 600 percent is the interest rate. And that would make Tony Soprano blush. Your Honor, I'm completely on board with that problem. And, in fact, I'll just throw out here, our office, in a completely different context, is involved in consumer-related cases against auto equity loans and similar companies. That's good to hear. Because they are being investigated for whether they can be held to Pennsylvania's usury restrictions and so on. Well, that's good to hear. That's terrible, but that's really not relevant to this case. That's not relevant here. But she's actually alleging she wasn't even in the fault, because if you apply the 6 percent legal rate to it, she's saying her payments were corrupt. That's not in front of us. It's not. And she did sign the contract, and she did incur the debt and so on. So we're really going off the deep end there. Yeah. Anyway, except as to Jones, who we agree should have a chance to develop his own defenses, as to the other state police defendants, we ask you to affirm. Thank you. What about Falcone? It troubles me. I understand, because of all that's been said this morning, that it's troubling to you and to the other members of the bench. But one thing that I think sort of screams out, for want of a nail, a kingdom was lost. I mean, Falcone did write that one-page report. That's the only thing he did. And he said in there, I recommend that this be pursued. That one-page report may be the only thing he did. It's like saying, well, he just pulled the sugar. That's all he did, a little tiny sugar. But afterwards, it took a lot more than just that one page to proceed, to develop the case, and so on and so forth. And just because he told the colleagues something that at this stage is being questioned, I don't think is enough to make him liable for everything that happened afterwards. We're not talking about liable. We're just talking about getting beyond 12B6. We're not here to establish liability. We're just, whether or not there's enough to go forward. Well, okay. And I think that's a helpful point for you to bring up. Even though I don't think that it states a claim, I do think that if it goes any further, he has a lot to explain or not explain, and the consequences of who said what and who did what and who was really responsible for the challenged events will be sorted out. Thank you very much. Thank you. Mr. Sullivan? One thing I want to point out is that we don't concede that there is a default of this loan. I understand that. Mr. Sorrell, you're not conceding default, but that doesn't help us. That's not really relevant. That's beyond the scope of our inquiry. Well, it's the unilateral assertion of the creditor. Hopefully this is within the scope. In order for the police to act on it, there has to be notice and opportunity first. They can't inject the state action, even if they believe there was a breach, until there's some notice and opportunity to be heard. You know, that might be one page in the police report that Officer Falcon investigated the situation, but as a result of that one page, he found out that this car was owned by Ms. Auberg, and nevertheless he directed Trooper Jones to issue an arrest warrant against her. And then that arrest warrant misrepresented the ownership of the vehicle, misrepresented the order to repossess the vehicle, saying that it was an order when it's a private request to repossess the vehicle. Those things should open up the door to 1983 liability against Mr. Jones and Mr. Falcon. The Officer Palo, or Detective Palo, the inference against him should be, when he wrote his affidavit of probable cause, the inference should be that he knew that the vehicle belonged to Auberg, because it's in the police report. It's in Jones's police report. And the police look up title information, look up vehicle information all the time. We assert that he would have looked it up, and that's a reasonable inference. It's also a reasonable inference that the Ridley Township Police, Detective Palo, ordered the car to be given to the creditor and not to the person who was the title owner. And if there was some notice and opportunity to be heard, the creditor would actually have to prove that there is a security interest. The police don't know that without that, and would have to prove that there's a breach. Under Pennsylvania law, a secured creditor is not the victim of a theft crime, as a matter of black matter law. Okay, well, I think that hurts you. But we understand your argument, though. Any questions? No. Thank you very much, Mr. Thank you very much. A very interesting case. I wish it were a little more lucid, but it's a very interesting case. Thank you very much. We take matters into account.